MAYNARD S. MASON *v.* JAMES F. WALSH ET AL.
(9071)

O'CONNELL, LAVERY and HEIMAN, Js.

Argued November 6—decision released December 17, 1991

*Karen P. Blado,* with whom, on the brief, was *Cameron C. Staples,* for the appellant (named defendant).

*Terence S. Hawkins,* for the appellee (plaintiff).

HEIMAN, J. The defendant, James F. Walsh III,[1] appeals from a judgment rendered on a verdict against him, awarding the plaintiff $75,000 in a medical malpractice action arising out of the defendant's alleged failure to obtain the plaintiff's informed consent to the administration of general anesthesia before surgery.

The defendant claims that the trial court improperly (1) admitted the testimony of the plaintiff's expert witness into evidence, (2) charged the jury concerning the defendant's duty to obtain the plaintiff's informed consent, (3) permitted the jury to consider the case when the evidence was insufficient to prove that the administration of general anesthesia caused the plaintiff's arrythmia, (4) permitted the jury to consider the case when the evidence was insufficient to establish that the defendant's failure to obtain the plaintiff's informed consent caused the plaintiff's arrythmia, (5) permitted the verdict against the defendant to stand when it was inconsistent with the verdicts in favor of Sarwar and

---

[1] The original defendants were Walsh, Hasan Sarwar, Alberto Guinazu and St. Vincent's Medical Center. St. Vincent's Medical Center was awarded summary judgment. The jury returned verdicts in favor of Sarwar and Guinazu. Only Walsh appealed from the judgment. The original plaintiffs were Maynard S. Mason and Evelyn Mason, who sought damages for loss of consortium. The jury found in favor of Evelyn Mason but awarded her "No Dollars." She took no appeal from that judgment. For the purposes of this appeal, therefore, the word plaintiff refers only to Maynard S. Mason, and the word defendant refers only to Walsh.

Guinazu, (6) refused to direct a verdict in the defendant's favor or to grant his "Motion to Set Aside Verdict or in the alternative Motion for Judgment Notwithstanding the Verdict" and (7) permitted the verdict to stand when the amount awarded was excessive. We agree that the trial court improperly denied the "Motion to Set Aside Verdict or in the alternative Motion for Judgment Notwithstanding the Verdict," and reverse the trial court's judgment.

The jury could reasonably have found the following facts. In late 1982, the plaintiff consulted the defendant, a urologist, for the treatment of an infection caused by a hydrocele. In response to the defendant's questions regarding his medical history, the plaintiff indicated that he had received general anesthesia in connection with a prior hydrocelectomy. Although the plaintiff had suffered from heart palpitations on several occasions, he denied any history of heart problems. While the plaintiff's infection improved, the hydrocele ultimately required surgical treatment.

Before the plaintiff's admission to St. Vincent's Medical Center for surgery, the defendant informed the plaintiff of his recommendation that general anesthesia be employed during the surgery. The defendant recognized, however, that the anesthesiologist usually possessed the ultimate authority over the choice of anesthesia. In a separate consultation between the defendant and an anesthesiologist, the anesthesiologist agreed that general anesthesia was appropriate in this case.

The plaintiff was admitted to the hospital on February 27, 1983. On that evening, Hasan Sarwar, an anesthesiologist, met with the plaintiff. Sarwar introduced himself to the plaintiff as a member of the anesthesia department, reviewed the plaintiff's medical records and questioned the plaintiff concerning his

medical history, including the existence of any previous lung problems, jaundice, hepatitis or the use of anesthesia. On the basis of this information, Sarwar classified the plaintiff as a "category two" according to a descending scale, developed by the American Society of Anesthesiologists, designed to assess the strength of a patient's candidacy for general anesthesia.[2] Sarwar then noted the result of his evaluation on the plaintiff's hospital chart.

On February 28, 1983, the morning of surgery, Alberto Guinazu, another anesthesiologist, met with the plaintiff in the holding area to the operating room to review the plaintiff's chart and Sarwar's preoperative anesthesia note, which indicated the specific anesthesia that Sarwar selected as a result of his examination of the plaintiff. Once inside the operating room, Guinazu administered a general anesthetic to the plaintiff in preparation for his impending surgery, which was to be performed by the defendant. Approximately seven or eight minutes after Guinazu began administering general anesthesia, the plaintiff suffered an incident of atrial fibrillation. Guinazu, in consultation with the defendant, decided to abort the operation and investigate the cause of the atrial fibrillation. The plaintiff was then brought out of his anesthetized state. The surgical procedure, which had not yet been commenced, was canceled. After the aborted surgery, a physician specializing in cardiovascular disease examined the plaintiff and stabilized his heart rate.

Several days later, the surgery was performed successfully using a local anesthetic. Because of the delay in his surgery, the plaintiff was discharged from the hospital several days later than had been anticipated.

[2] The scale distinguishes between five categories. The strongest candidates for anesthesia are classified as "category one." The weakest candidates are classified as "category five."

At the time of trial, the plaintiff remained under a physician's care for his irregular heart rate and was unable to exert himself as he had before the atrial fibrillation. He required assistance at his job, and could neither work in his yard nor maintain his usual physical relationship with his wife.

At trial, the plaintiff claimed, inter alia, that the defendant, Sarwar and Guinazu each breached his respective duty of obtaining the plaintiff's informed consent to the administration of general anesthesia. The defendant moved for a directed verdict at the completion of the evidence, arguing that the plaintiff failed to produce expert testimony indicating that the defendant was under a duty to inform him regarding the risks associated with the use of general anesthesia. The trial court reserved decision on the motion and committed the case to the jury, which returned verdicts in favor of Sarwar and Guinazu and against the defendant.

After the verdict against him was accepted and recorded, the defendant filed a timely "Motion to Set Aside Verdict or in the alternative Motion for Judgment Notwithstanding the Verdict." See Practice Book §§ 320 and 321. In his postjudgment motion, the defendant again set forth his claim that the plaintiff failed to produce expert testimony to establish the existence of the defendant's duty to advise the plaintiff of the risks attending the use of general anesthesia. Rather, the defendant argued, all the evidence indicated that the duty to inform rested with an anesthesiologist. The trial court denied the defendant's motion, and this appeal followed.

"The theory of negligence . . . [applies] to cases in which it is alleged that the physician failed to obtain an informed consent." (Emphasis in original.) *Shenefield* v. *Greenwich Hospital Assn.,* 10 Conn. App. 239, 248, 522 A.2d 829 (1987). An informed consent

action, however, differs from the ordinary negligence action in that the plaintiff must prove both the duty and the breach of that duty through expert testimony. *Cross* v. *Huttenlocher,* 185 Conn. 390, 393, 440 A.2d 952 (1981). In order to establish the existence of a duty to inform, the plaintiff must show through expert testimony that "the customary standard of care of physicians in the same practice as that of the defendant doctor was to obtain the patient's consent prior to performing any operation." *Shenefield* v. *Greenwich Hospital Assn.,* supra, 248–49. Once the existence of the duty to inform has been established, the degree or extent of disclosure necessary to satisfy the duty must be proven in accordance with the lay standard. *Logan* v. *Greenwich Hospital Assn.,* 191 Conn. 282, 292, 465 A.2d 294 (1983).

Where, as here, a surgeon engages one or more specialists to perform a portion of a procedure, the issue as to who has the duty to obtain the patient's consent to that portion of the procedure to be performed by the specialist arises. It was incumbent upon the plaintiff to establish by expert testimony which of the physicians, if any, owed him the duty of disclosing sufficient facts to permit him to exercise an informed consent to the use of general anesthesia. See *Shenefield* v. *Greenwich Hospital Assn.,* supra. In his appellate oral argument, however, the plaintiff correctly conceded that he did not produce expert testimony to establish that the defendant owed the plaintiff a duty to inform him regarding the risks associated with the use of general anesthesia. Indeed, no party produced expert testimony establishing that the defendant, a urologist, was under such a duty. Because the plaintiff offered no expert testimony showing that the customary standard of care among physicians in the same practice as that of the defendant was to obtain the patient's informed consent to the method of anesthesia, the jury was left

to resort to surmise, guess, conjecture and speculation as to whether the duty of disclosure rested on the defendant, as opposed to one of the anesthesiologists. See *Krause* v. *Bridgeport Hospital,* 169 Conn. 1, 7, 362 A.2d 802 (1975). As a result, the jury could not reasonably and legally have reached a conclusion other than one in the defendant's favor, and the trial court improperly refused to grant either the defendant's motion for directed verdict or his posttrial motion to set aside the verdict. See id., 3–4.

In light of our resolution of this claim, it is unnecessary to address the other issues raised by the defendant.

The judgment is reversed, and the case is remanded with direction to grant the named defendant's motion to set aside the verdict and to render judgment in favor of the defendant.

In this opinion the other judges concurred.