DONNA GORAL *v.* CHARLES H. KENNEY
(9714)

DUPONT, C. J., NORCOTT and HEIMAN, Js.

232

Argued October 2—decision released December 17, 1991

*Karen P. Blado,* with whom, on the brief, was *Ann E. Lynch,* for the appellant (defendant).

*Peter A. Kelly,* for the appellee (plaintiff).

HEIMAN, J. The defendant, Charles H. Kenney, appeals[1] from a judgment rendered on a verdict for damages of $326,500 in favor of the plaintiff. The action arose out of the plaintiff's claim of dental malpractice by the defendant.

On appeal, the defendant asserts that the trial court improperly (1) instructed the jury that it was not to draw any adverse inference from the fact that the plaintiff's expert witness had previously been sued for malpractice, (2) charged the jury on the issue of informed consent, (3) concluded that the amount of the verdict was not excessive and (4) denied the defendant's motion for remittitur. We affirm the trial court's judgment.

The jury could reasonably have found the following facts. In July, 1985, the plaintiff consulted with the defendant concerning the replacement of her partial denture with a full upper denture. The defendant told

---

[1] Appellate counsel for the defendant was not involved in the trial of this case.

her that this would require the extraction of her remaining upper teeth and the immediate insertion of a new full upper dental plate. The defendant explained that the plaintiff would be anesthetized during the procedure. The defendant further advised the plaintiff that she would experience pain after the procedure, and that the procedure involved the risk of postoperative bleeding, clot formation under her new denture, swelling and infection. The defendant did not warn the plaintiff that the extraction of her teeth carried a risk of perforation of the maxillary sinus wall.

On January 16, 1986, the defendant extracted the plaintiff's six upper teeth and inserted a new full upper denture. After completing the operation, the defendant gave the plaintiff a prescription for Percodan for relief of pain. The defendant examined the plaintiff on the day following surgery, as well as on several follow-up visits, and advised the plaintiff that her complaints of pain were normal.

The plaintiff continued to experience pain and developed facial swelling. She also detected an odor emanating from her mouth. On February 17, 1986, she visited the defendant, who referred her to Bernard Levine, an oral surgeon.

On February 18, 1986, the plaintiff consulted Levine, who concluded that she was suffering from an antral-oral fistula and a severe sinus infection. Levine treated the infection and subsequently performed surgery to close the fistula. The plaintiff lost about two weeks' wages and incurred expenses as a result of the treatment she received from Levine. During periods of cold weather, she continues to suffer substantial pain and discomfort, requires daily pain medication and is unable to go on skiing trips or to engage in other outdoor activities. Additionally, she may require further oral surgery.

The jury returned a verdict in favor of the plaintiff in the amount of $326,500. Because the plaintiff filed an offer of judgment in the amount of $50,000, which the defendant failed to accept, the plaintiff also became entitled to interest on the amount of the verdict.[2] As a result, the judgment as rendered by the trial court was in the amount of $431,266.28.

We note that the verdict was accepted and ordered recorded by the trial court on September 27, 1990. The defendant's motion to set aside the verdict was not filed until October 5, 1990. As such, it was not filed "within five days after the day the verdict is accepted or judgment rendered, exclusive of such days as the clerk's office is not open . . . ." Practice Book § 320. The plaintiff filed a timely objection and motion to strike the motion to set aside the verdict. The trial court denied the motion to set aside the verdict on the ground that it was filed late. The defendant subsequently filed

[2] Practice Book § 350 provides in pertinent part: "After trial the court shall examine the record to determine whether the plaintiff made an 'offer of judgment' which the defendant failed to accept. If the court ascertains from the record that the plaintiff has recovered an amount equal to or greater than the sum certain stated in his 'offer of judgment,' the court shall add to the amount so recovered twelve percent annual interest on said amount, computed as provided in Gen. Stat., § 52-192a . . . ."

General Statutes § 52-192a provides in pertinent part: "(a) After commencement of any civil action based upon contract or for the recovery of money only, the plaintiff may before trial file with the clerk of the court a written 'offer of judgment' signed by him or his attorney, directed to the defendant or his attorney, offering to settle the claim underlying the action and to stipulate to a judgment for a sum certain. The plaintiff shall give notice of the offer of settlement to the defendant's attorney, or if the defendant is not represented by an attorney, to the defendant himself. . . .

"(b) After trial the court shall examine the record to determine whether the plaintiff made an 'offer of judgment' which the defendant failed to accept. If the court ascertains from the record that the plaintiff has recovered an amount equal to or greater than the sum certain stated in his 'offer of judgment', the court shall add to the amount so recovered twelve percent annual interest on said amount . . . ."

a separate motion for remittitur,[3] which was denied by the trial court after a full hearing.

## I

The defendant first asserts that the trial court improperly instructed the jury that it was not to draw any adverse inference from the fact that the plaintiff's expert witness had previously been sued for malpractice, and that any prior malpractice suit was irrelevant to the witness' credibility.[4] He posits that this instruction impermissibly limited the jury's right to determine the credibility of the witness. We disagree.

As a threshold matter, we must identify the appropriate standard under which we review this claim. A properly filed written motion to set aside the verdict is a prerequisite to full appellate review of claims of error in civil jury cases in which the plaintiff seeks damages. *Small* v. *South Norwalk Savings Bank,* 205 Conn. 751, 759, 535 A.2d 1292 (1988). This rule applies to appellate review of trial court rulings as well as insufficiency of the evidence claims. Id. If a timely written motion to set aside the verdict is not filed, appellate review is generally limited to ascertaining whether the trial court's rulings constituted plain error. Id. Because the defendant failed to file a timely motion to set aside the verdict, we afford this claim only plain error review.

[3] General Statutes § 52-228 provides: "If any judgment is rendered, by mistake or clerical error, for a larger sum than is due, the party recovering the judgment may have the amount of the judgment decreased by remittitur to the amount which is due, provided reasonable notice has been given to the adverse party or his attorney. The court may thereupon order the record of the judgment to be corrected, and affirm the judgment for the amount to which it has been decreased."

[4] The language used by the trial court is as follows: "And further, there's been evidence about the malpractice actions that Doctor Lane was involved with, and I'm telling you, ladies and gentlemen, that you are not entitled to draw any adverse inferences from the fact that the doctor testified in this case vis-a-vis his own malpractice cases . . . . That is totally irrelevant to whether or not he is a credible witness . . . ."

"When our review is limited to the plain error standard, the appellant does not have access to plenary review." *Small* v. *South Norwalk Savings Bank,* supra. Reversal for plain error is generally "reserved for truly extraordinary situations where the existence of the error is so obvious that it affects the fairness and integrity of and public confidence in the judicial proceedings." *State* v. *Hinckley,* 198 Conn. 77, 87–88, 502 A.2d 388 (1985); *Cuartas* v. *Greenwich,* 14 Conn. App. 370, 375, 540 A.2d 1071 (1988). "We consider the [plaintiff's] claims of error in the light of this rarefied standard of review." *Small* v. *South Norwalk Savings Bank,* supra.

The trial judge has both the right and the obligation to charge the jury regarding the basic criteria it should apply in determining the credibility of witnesses. 2 B. Holden & J. Daly, Connecticut Evidence § 125a. We have reviewed the transcripts[5] and conclude that the trial court's general instructions regarding the criteria by which the jury should assess the credibility of witnesses was detailed, sufficient and correct in law. At no time did the trial court indicate its belief or disbelief in the testimony of the expert witness. It specifically instructed the jury that the determination of the credibility of all witnesses was an issue for them to determine. See *State* v. *Floyd,* 10 Conn. App. 361, 369, 523 A.2d 1323, cert. denied, 203 Conn. 809, 525 A.2d 523, cert. denied, 484 U.S. 859, 108 S. Ct. 172, 98 L.

---

[5] In our review of the transcript we find this statement made by the defendant's counsel in final argument, which appears to reach the same conclusion as did the trial court. "You heard him talk about his malpractice cases. Sure, that's not relevant in the strict sense of the word, that because he was negligent in other cases that he doesn't know what he's talking about in this case? No, we're not trying to say that. But we're pointing out to you the man's character. He is in here talking about a deviation from the standard of care, the same standard of care that he violated on more times than he talked to you about. It took him an hour to explain all the cases he had been involved in. But he can come in here and criticize Doctor Kenney, who hadn't ever been involved in a lawsuit other than this one. But you evaluate that testimony. You heard it. You evaluate it."

Ed. 2d 126 (1987). As a result, the trial court's instructions did not constitute "manifest injustice amounting to plain error under all the circumstances." *Valley* v. *Fazzina,* 187 Conn. 423, 428, 446 A.2d 1068 (1982).[6]

## II

The defendant next asserts that the trial court improperly charged the jury concerning the doctrine of informed consent. We disagree.

The complaint was in a single count but alleged two separate theories of liability: First, that the defendant rendered negligent postoperative care, and, second, that he failed to inform the plaintiff adequately regarding the nature and attendant risks of the surgery in order to permit the plaintiff to make a knowing and informed decision as to whether to undergo the surgery.

Though it contained only one count, the complaint set forth two causes of action.[7] "Where . . . two or more causes of action are incorporated in one count, as here, the defendant has the right to save himself from the implication of a general verdict by seeking from the jury answers to apt and proper interrogatories." *Hartford* v. *Anderson Fairoaks, Inc.,* 7 Conn. App. 591, 594, 510 A.2d 200 (1986). Alternatively, the

---

[6] Because of our limited review of this issue, we express no opinion regarding whether this instruction would have constituted error under plenary review.

[7] While a claim of lack of informed consent is an action in negligence; *Hammer* v. *Mount Sinai Hospital,* 25 Conn. App. 702, 706 n.4, 596 A.2d 318 (1991), in this case the lack of informed consent claim is a different cause of action from the claim of negligence arising out of the postoperative care because the claims arise from a different group of facts. " 'A cause of action is that single group of facts which is claimed to have brought about an unlawful injury to the plaintiff and which entitles the plaintiff to relief.' *Wade's Dairy, Inc.* v. *Fairfield,* 181 Conn. 556, 560, 436 A.2d 24 (1980)." *Levine* v. *Town Plan & Zoning Commission,* 25 Conn. App. 199, 207, 594 A.2d 9 (1991).

defendant may request that the complaint be divided into counts and that the jury be required to return separate verdicts as to each cause of action. *Sheeler* v. *Waterbury,* 138 Conn. 111, 114, 82 A.2d 359 (1951). Because the defendant did not take advantage of either of the options available to him, the general verdict rule applies.

The import of the general verdict rule is that where a jury returns a general verdict in favor of a party, and neither party requests interrogatories or separate verdicts, an appellate court will presume that the jury found every issue in favor of the prevailing party. *Stone* v. *Bastarache,* 188 Conn. 201, 204, 449 A.2d 142 (1982). "[H]ence, if one of these causes of action is supported by credible testimony the verdict must stand, although the other cause of action was not supported by credible testimony or authorized by law, since it cannot be known that the verdict was based upon the invalid cause of action." *Wladyka* v. *Waterbury,* 98 Conn. 305, 313, 119 A. 149 (1922); *Hammer* v. *Mount Sinai Hospital,* 25 Conn. App. 702, 708, 596 A.2d 318 (1991). The rule applies whenever a verdict for one party could reasonably be rendered on one or more distinct causes of action. *Finley* v. *Aetna Life & Casualty Co.,* 202 Conn. 190, 202, 520 A.2d 208 (1987).

The defendant does not attack the propriety of the trial court's jury instructions concerning the postoperative negligence issue, nor does he question the sufficiency of the evidence with respect to that count. We conclude that the general verdict rule applies in the present case. Because the verdict for the plaintiff contains an implicit finding that the defendant negligently rendered postoperative care, we will not review his claim regarding the trial court's instructions on the issue of informed consent.

## III

The defendant next asserts that the verdict was excessive. We disagree.

This claim is inextricably interwoven with the trial court's denial of the defendant's motion to set aside the verdict. Because the defendant failed to file a timely motion to set aside the verdict, we are limited to plain error review of this claim. See section I, supra. We have already set out the standard for plain error review. On the basis of our application of that standard, we conclude that the amount of the verdict is not so great that it obviously "so shocks the sense of justice as to compel the conclusion that the jury was influenced by partiality, prejudice, mistake or corruption." *McKirdy* v. *Cascio,* 142 Conn. 80, 86, 111 A.2d 555 (1955); see *Oaks* v. *New England Dairies, Inc.,* 219 Conn. 1, 14, 519 A.2d 1261 (1991). Thus, the amount of the verdict does not constitute plain error.

## IV

Finally, the defendant posits that the trial court improperly denied his motion for remittitur. We disagree.

Before reaching the merits of this issue, we first point out that, despite counsel's repeated statements at oral argument discussing the sum of $431,266.28, the amount of the verdict was $326,500. The figure referred to by counsel includes the imposition of interest in the amount of $104,766.28 occasioned by the defendant's rejection of the plaintiff's offer of judgment. See General Statutes § 52-192a; Practice Book § 350.[8] "We deem § 52-192a to be a . . . procedural

---

[8] Practice Book § 348 provides: "If such 'offer of judgment' is not accepted within thirty days, such 'offer of judgment' shall be considered rejected and not subject to acceptance unless refiled."

rule, punitive in nature, and enacted to promote fair and reasonable pretrial compromises of litigation." *Paine Webber Jackson & Curtis, Inc.* v. *Winters,* 22 Conn. App. 640, 651, 579 A.2d 545, cert. denied, 216 Conn. 820, 581 A.2d 1055 (1990). Thus, despite the fact that the judgment totals $431,266.28, we need be concerned only with the amount of the verdict.

We afford this claim plenary review. We draw a distinction in our review of the separate motion for remittitur and our treatment of the motion to set aside the verdict because General Statutes § 52-228, which provides for remittitur, does not explicitly refer to any time limitation for the filing of such a motion. Furthermore, the record is devoid of any objection by the plaintiff to the filing of the separate motion for remittitur on either the basis of timeliness or the basis that General Statutes § 52-228b precludes such a motion independent of a motion to set aside the verdict.[9] See *Lo Sacco* v. *Young,* 210 Conn. 503, 509–510, 555 A.2d 986 (1989).

We have already set forth many of the facts that the jury could reasonably have found, including the plaintiff's ongoing pain and discomfort, as well as the prospect of future surgery. The mortality tables indicated that a woman of the plaintiff's age has a life expectancy of 37.88 years. The conditions from which she suffers are permanent. She incurred medical expenses of approximately $2118 and lost earnings of about $720. She also incurred other monetary expenses.

In ruling on the motion for remittitur, the trial court was obliged to "view the evidence in the light most favorable to the plaintiff in determining whether the verdict returned was reasonably supported thereby. . . . The size of the verdict alone does not determine

---

[9] We express no opinion as to whether or under what circumstances General Statutes § 52-228b precludes a motion for remittitur that is independent of a motion to set aside the verdict.

whether it is excessive. The only practical test to apply to this verdict is whether the award falls somewhere within the necessarily uncertain limits of just damages or whether the size of the verdict so shocks the sense of justice as to compel the conclusion that the jury was influenced by partiality, prejudice, mistake or corruption. . . . Every reasonable presumption in favor of the correctness of the court's refusal to set aside the verdict as excessive should be indulged and its ruling will not be disturbed unless there is a clear abuse of discretion." (Citations omitted; internal quotation marks omitted.) *Oaks* v. *New England Dairies, supra,* 13–14.

"The concurrence of the judgments of the judge and the jury, who saw the witnesses and heard the testimony, is a powerful argument for sustaining the action of the trial court." *Chanosky* v. *City Building Supply Co.,* 152 Conn. 642, 643, 211 A.2d 141 (1965).

Our review of the record convinces us that the amount of damages awarded to the jury falls within the "necessarily uncertain limits of fair and just damages." *Herb* v. *Kerr,* 190 Conn. 136, 139, 459 A.2d 521 (1983). While the award may have been generous, it does not shock the conscience. As a result, the trial court did not abuse its discretion in denying the motion for remittitur.

The judgment is affirmed.

In this opinion the other judges concurred.